UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ERNESTO G. MARTINEZ,<br><br>        Plaintiff,<br>    v.<br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>        Defendant. | No. EDCV 06-1154 FFM<br><br>MEMORANDUM DECISION AND ORDER |

On October 27, 2006, plaintiff Ernesto G. Martinez brought this action seeking to overturn the decision of the Commissioner of the Social Security Administration[1] denying his application for Supplemental Security Income and Disability Insurance Benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the Court's November 2, 2006 case management order, on July 10, 2007, the parties filed a Joint Stipulation detailing each party's arguments and authorities. The Court has reviewed the administrative record ("AR"), filed by defendant on April 30, 2007, and the Joint

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007 and is hereby substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

Stipulation ("JS"). For the reasons stated below, the decision of the Commissioner is reversed and remanded for further proceedings.

## PROCEDURAL HISTORY

On October 2, 2003, plaintiff filed an application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff claims a disability onset date of September 15, 2003. The application was denied initially and upon reconsideration. Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ"). ALJ Jay E. Levine held a hearing on March 1, 2006. Plaintiff appeared with counsel and testified at the hearing. On April 28, 2006, the ALJ issued a decision denying benefits. Plaintiff sought review of this decision before the Appeals Council, which denied the request for review.

Plaintiff commenced the instant action on October 27, 2006.

## CONTENTIONS

Plaintiff raises three issues in this action:

1.  Whether the ALJ properly considered the treating physician's opinion of disability.
2.  Whether the ALJ properly considered the lay witness testimony.
3.  Whether the ALJ posed an incomplete hypothetical to the vocational expert and failed to develop the record.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1  28 L. Ed. 2d 842 (1971) (internal quotation marks omitted); *Desrosiers v. Secretary of*
2  *Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is
3  "such relevant evidence as a reasonable mind might accept as adequate to support a
4  conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks omitted). This
5  Court must review the record as a whole and consider adverse as well as supporting
6  evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). Where evidence is
7  susceptible to more than one rational interpretation, the Commissioner's decision must
8  be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

A. <u>Issue One</u>.

On July 30, 2004, plaintiff underwent an "Adult Psychiatric Evaluation" ("APE") at the Victor Valley Behavioral Health Clinic (the "VVBHC") by Jeremiah Umakanthan, M.D. (AR 276-77.) The report notes that plaintiff was hospitalized in March of 2004 and three weeks prior to the evaluation. Both hospitalizations were due to suicidal intent due to depression. (AR 276.) The APE indicates that plaintiff was taking Respirdol and Lexapro. It also indicates that plaintiff had been incarcerated several times and had last worked in September of 2003, but was "asked to leave" and could not currently work due to depression. (*Id.*)

Under "Mental Status," Dr. Umakanthan indicated that plaintiff had poor hygiene and suicidal intent without a plan. He found that plaintiff's insight was fair, his judgment poor, and that plaintiff was not oriented as to time. (AR 277.) With respect to Axis I,[2] Dr. Umakanthan diagnosed plaintiff with major depression,

---

[2] The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 27-33 (4th ed., text rev., 2000) (the "DSM-IV-TR"). Axis I refers to clinical disorders and other conditions that may be a focus of clinical attention. Axis II

(continued...)

recurrent, severe with psychotic features. Dr. Umakanthan also noted that plaintiff had a history of substance dependence. With respect to Axis II, Dr. Umakanthan indicated that plaintiff suffered pain. Dr. Umakanthan listed a "brain injury" and hepatitis C under Axis III. In Axis IV, Dr. Umakanthan gave plaintiff a GAF score of 40.[3] (*Id.*)

In his decision, the ALJ noted that on July 12, 2004, Dr. Umakanthan issued a letter stating that plaintiff was "disabled due to mental disability." (AR 16, citing AR 278.) The ALJ rejected this determination of disability, however, because (1) the letter was issued in order to obtain a reduced-fare bus pass for plaintiff from the Victor Valley Transit Authority, and included no substantiating evidence or explanation; and (2) the treating records from the facility were "extremely brief, contain[ed] no real assessment of [plaintiff's] mental condition or functional abilities, and provide[d] no information to suggest the claimant would be unable to perform work within the parameters established herein." (AR 16.)

Plaintiff contends that the ALJ ignored Dr. Umakanthan's APE. Plaintiff argues that the APE provides a detailed assessment of plaintiff's current mental status and thereby substantiates Dr. Umakanthan's statement that plaintiff is disabled. Plaintiff argues that the ALJ was thus required to provide clear and convincing reasons for rejecting Dr. Umakanthan's disability opinion. (JS 3-5.) The Court finds that the ALJ

---

[2](...continued) is used to report personality disorders and mental retardation. Axis III refers to general medical conditions that may be relevant to the understanding or management of the disorder. Axis IV pertains to psychosocial and environmental problems, such as familial or interpersonal stress, that may affect the diagnosis, treatment, and prognosis of mental disorders. Axis V is the Global Assessment of Functioning (the "GAF"), or, for persons under the age of 18, the Children's Global Assessment Scale. The GAF reports the clinician's judgment of the individual's overall functioning. *Id.*

[3] A GAF score of 40 indicates that there is "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . .)." DSM-IV-TR at 34.

4

provided an insufficient rationale for rejecting Dr. Umakanthan's opinion.

In evaluating physicians' opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.927(d). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. § 416.927(d)(2). An ALJ may reject a treating physician's uncontradicted opinion on a medical impairment or the ultimate issue of disability only with "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)) (internal quotation marks omitted). If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide "specific and legitimate" reasons supported by substantial evidence in the record in order to reject the treating physician's opinion. *Lester*, 81 F.3d at 830; *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

Here, Dr. Umakanthan's opinion that plaintiff was disabled due to mental impairments was contradicted by the findings of the state agency examining physician, M. Becraft, M.D., who opined that plaintiff was capable of at least simple repetitive tasks when sober. (AR 250.) The ALJ was thus required to provide "specific and legitimate" reasons, supported by substantial evidence in the record, in order to reject Dr. Umakanthan's opinion. *Lester*, 81 F.3d at 830.

///

Under certain circumstances, the fact that a doctor's opinion was issued for the purposes of obtaining a bus pass could provide a specific and legitimate reason for

rejecting the opinion. That is, an ALJ may consider the purpose for which a physician's opinion is offered in determining how much weight to give it. *See Desrosiers*, 846 F.2d at 576 (considering distinctions between California workers' compensation regulations and Social Security disability scheme in comparing workers' compensation physicians opinions to treating physician's opinion). In the Social Security context, a disability opinion goes to whether a claimant is capable of any work, given his or her limitations due to the impairments at issue. *Holohan*, 246 F.3d at 1202. The record does not reveal whether a disability determination in the context of the Victor Valley public transit system relates to whether the claimant is capable of employment.

However, the ALJ's assertion that the VVBHC records did not assess plaintiff's mental condition or limitations evidently ignores Dr. Umakanthan's APE. The APE diagnosed plaintiff with major depression, recurrent, severe with psychotic features; listed several factors potentially contributing to plaintiff's mental disorder; and assigned plaintiff a GAF score of 40, a score which indicates major impairment in several areas of functioning. (AR 277; *see also* DSM-IV-TR at 34.) Thus, although Dr. Umakanthan's disability letter did not give reasons for his assertion that plaintiff was disabled, the Court cannot conclude that it was unsupported by clinical findings. *Cf. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief, and unsupported by clinical findings). Moreover, given the probative nature of Dr. Umakanthan's APE, the Court cannot conclude that it was harmless error for the ALJ to completely ignore it. Accordingly, remand is required for reconsideration of Dr. Umakanthan's disability opinion in light of the APE. If the ALJ again rejects Dr. Umakanthan's opinion, the ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for so doing. *Lester*, 81 F.3d at 830.

B. <u>Issue Two</u>.

  Plaintiff's sister, Linda Donaldson, completed a "Function Report Adult Third Party" form on November 15, 2004. (AR 108-16.) In the Report, she indicated that plaintiff lived with her, that she spent 15 hours a day with him, and that she had known him for 46 years. (AR 108.) She indicated that she had to remind him to bathe, brush his teeth and hair, change his clothes, pick up after himself, and go to his doctors' appointments. (AR 109.) She reported that he did not prepare meals, do household chores or yard work, or handle money because he would forget what he was doing. (AR 110-12.) She reported that plaintiff tired easily, slurred his words, could not stand for long, required a cane to walk, and would have to rest for 10 or 15 minutes after walking 20 feet. (AR 113-14.) She further reported that plaintiff did not handle stress or changes in his routine well, got depressed a lot, cried, and talked to himself. (AR 114-15.)

  Plaintiff contends that the ALJ was required to provide reasons specific to Ms. Donaldson for rejecting Ms. Donaldson's statements. (JS 7-8.) The Court agrees. 20 C.F.R. § 416.913(d) provides that the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [his] ability to work." The Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993) (ALJ must consider lay testimony concerning a claimant's ability to work); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (same). This principle applies both to sworn hearing testimony of witnesses (see *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) as well as to unsworn statements and letters of friends and relatives (*see Schneider v. Commissioner of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). If the ALJ chooses to reject such evidence from other sources, he may not do so without comment (*Nguyen*, 100 F.3d at 1467), and he must

7

provide "reasons that are germane to each witness" (*Dodrill*, 12 F.3d at 919).  Here, the ALJ did not provide any reasons for ignoring Ms. Donaldson's report.  (*See* AR 12-19.)

Defendant cites *Stout* to support the proposition that the ALJ's failure to address Ms. Donaldson's statement was harmless error.  (JS 9-10.)  The Ninth Circuit in *Stout* held that "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.  But assuming the reliability of Ms. Donaldson's statement, this Court cannot confidently conclude that no reasonable ALJ would have arrived at a different disability determination if the memory problems suffered by the claimant prevented him from, *inter alia*, handling money, performing household chores, or attending to basic hygiene.[4]

Defendant further argues that the ALJ determined that plaintiff was not credible, and implies that the ALJ thus could dismiss Ms. Donaldson as being not credible as well.[5]  (JS 9-10.)  This argument is unavailing.  A lay witness who spends time with a

---

[4] Defendant cites *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) as support for his harmless error argument.  (JS 9.)  In that case, the ALJ's failure to address lay witness testimony was not cause for a remand.  However, the issue in *Vincent* was the establishment of a medically determinable impairment which required "'medically acceptable . . . diagnostic techniques,'" *Vincent*, 739 F.2d at 1395, and lay witness testimony concerning symptoms thus would not affect the outcome. Defendant also contends that *Stout* did not discuss the change to the regulations relied upon in *Dodrill*.  While it is true that the current regulation, 20 C.F.R. § 416.913(d)(4), is "permissive" and not mandatory in that it only provides that the Commissioner "may" consider statements from non-medical sources, the corresponding regulation in effect at the time the *Dodrill* court ruled was equally permissive.  *See* 20 C.F.R. 416.913(e)(1993) ("Information from other sources *may* also help us to understand how your impairment(s) affects your ability to work").

[5] Defendant also argues that Ms. Donaldson's written statement should be rejected because it was inconsistent with plaintiff's testimony.  (JS 9-10.)  The force of this argument is somewhat weakened by defendant's insistence that plaintiff's

(continued...)

1  plaintiff frequently, and who makes her own observations of the plaintiff's symptoms
2  rather than relying on plaintiff's assertions, may not be rejected on the basis that the
3  *plaintiff* is not credible. *See Dodrill*, 12 F.3d at 918-19.  Accordingly, remand is also
4  required for proper evaluation of the statement of Ms. Donaldson.  If the ALJ again
5  rejects her statement, he must provide reasons for so doing that are germane to Ms.
6  Donaldson. *Id.* at 919.
7  C.    Issue Three.
8      At the hearing, the ALJ posed the following hypothetical question to the
9  vocational expert:

> Q:  Okay.  Assume a hypothetical individual the claimant's age, education, prior work experience.  Assume this person is restricted to a light range of work; no pushing or pulling with the legs; no work on dangerous machinery; no work on unprotected heights; no industrial level pollutants; occasional climbing, no balancing; occasional stooping, kneeling, crouching, crawling; and the person is restricted to routine repetitive tasks, entry-level work.  Is there work in the regional or national economy such a person could perform?
>
> A:  There would be work as a bench assembler, which is light, unskilled, SVP two.  Regionally there are 3,000 positions, nationally in excess of 35, 000 positions.  There would be work as an inspector and hand packager, that work is also light, unskilled, SVP two.  Regionally there are 1,000 positions, nationally there are 19,000 positions.  There would be work as a cleaner in housekeeping, which is light, unskilled, SVP two. Regionally there are 6,000 positions,

---

[5](...continued)
testimony was not credible.

|    |    |
|---:|---|
| 1  | nationally in excess of 70,000 positions. |
| 2  | (AR 344.) |
| 3  | The ALJ then posed this hypothetical: |
| 4  | Q: Hypothetical two, assume a hypothetical individual, same |
| 5  | restrictions as in one, this person is going to be off task at |
| 6  | least 20 percent of the time due to pain and/or psychological |
| 7  | based symptoms. Is there work such a person could |
| 8  | perform? |
| 9  | A: No, that would erode the labor market completely. |
| 10 | (AR 345.) |

Plaintiff contends that the ALJ did not pose a complete hypothetical, in that the ALJ did not "indicate the amount of the 20% down time he allocates to pain and what part pertains to 'psychological' stressors." (JS 11.) The Court does not see what difference such a distinction would make. Whatever the breakdown of the 20% down time, the result would be the elimination of plaintiff from the job market, according to the vocational expert. Thus, any error in this aspect of the ALJ's hypothetical was harmless.

Plaintiff also contends that the ALJ erred by ignoring Dr. Umakanthan's assignment of a GAF score of 40 to plaintiff. Plaintiff is correct in asserting that an ALJ is required to accurately set out the plaintiff's limitations in his hypothetical to the vocational expert. *Andrews v. Shalala*, 53 F.3d 1035, 1043-44 (9th Cir. 1995) (remand upheld where hypothetical left out categories of plaintiff's limitations). However, no error occurs where the ALJ's hypothetical to the vocational expert omits limitations claimed but not proven. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As noted above, the GAF indicates the clinician's assessment of the patient's overall functioning. A GAF score of 40 indicates that there is "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment,

10

1  thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to
2  work . . .)." DSM-IV-TR at 34.  The Court has remanded the case in order for the ALJ
3  to assess Dr. Umakanthan's opinion of disability in light of the APE, which includes
4  the GAF score.  If the ALJ does not entirely reject Dr. Umakanthan's disability opinion
5  (and provide specific, legitimate reasons supported by substantial evidence in the
6  record for so doing), the ALJ must pose to the vocational expert a hypothetical
7  including all functional limitations he finds applicable.

8        Finally, plaintiff points out that he indicated at his hearing that he was scheduled
9  to have tests done to determine the source of his claimed seizures.  Plaintiff contends
10 that the ALJ had a duty to obtain and evaluate those test results before making his
11 decision.  The Court agrees.  It is well established that the ALJ has a special duty to
12 fully and fairly develop the record and to assure that the claimant's interests are
13 considered.  This special duty exists even when a claimant is represented by counsel.
14 *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cr. 1983).  Under the Commissioner's
15 regulations, both the disability benefits claimant and the Social Security
16 Administration bear a regulatory responsibility for developing the evidentiary record.
17 The claimant must produce medical evidence showing that he has an impairment, and
18 how severe that impairment is during the time the claimant claims to be disabled.  20
19 C.F.R. §§ 404.1512(c), 406.912(c).

20       In his opinion, the ALJ noted that plaintiff "alleged having continuing seizures,
21 but there is no evidence of seizures since 2003."  (AR 17.)  That plaintiff was currently
22 scheduled for testing to determine the source of seizures, however, should have
23 suggested to the ALJ that the record was incomplete or ambiguous on that point.  His
24 failure to obtain and evaluate the results of those tests before definitively concluding
25 that there was "no evidence of seizures since 2003" constituted a violation
26 / / /
27 of his obligation to fully and fairly develop the record.  *See*, *e.g.*, *Smolen v. Chater*, 80
28 F.3d 1273, 1288 (9th Cir. 1996).  Accordingly, remand is also required for proper

augmentation of the record.

## CONCLUSION

For the reasons set forth above, the matter requires remand for further proceedings. The judgement of the Commissioner is accordingly reversed and the matter is remanded pursuant to sentence 4 of 42 U.S.C. § 405(g) for further proceedings.

IT IS SO ORDERED.

DATED: March 26, 2008

/ s / FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge